IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CRAIG O. MAJORS, | ) |
| Petitioner, | ) |
| v. | ) No. 3:13-cv-0543 |
| DAVID SEXTON, | ) Judge Campbell |
| Respondent. | ) |

**MEMORANDUM OPINION**

Petitioner Craig Majors, a prisoner in state custody at the Northeast Correctional Complex in Mountain City, Tennessee, has filed a *pro se* petition under 28 U.S.C. § 2254 for a writ of habeas corpus (ECF No. 1). The respondent has filed an answer in opposition to the petition, along with a complete copy of the relevant portions of the underlying state-court record. The petition is ripe for review, and this Court has jurisdiction. 28 U.S.C. § 2241(d). For the reasons set forth herein, the petition will be denied.

**I.      PROCEDURAL BACKGROUND**

On January 29, 2008, the petitioner was found guilty by a Montgomery County Jury of especially aggravated kidnapping, attempted aggravated robbery, and aggravated burglary. The trial court denied Majors' motion for a new trial (ECF No. 25-1, at 16) and, on March 25, 2009, sentenced him to 20 years' incarceration at 100 percent on the especially aggravated kidnapping charge, to 6 years for attempted aggravated robbery, and 6 years on the aggravated burglary charge, all to run concurrently for a total effective sentence of 20 years. (ECF No. 25-6, at 16 (Sentencing Hearing Tr. at 15).) His conviction and sentence were affirmed on direct appeal. *State v. Majors*, No. M2009-000483-CCA-R3-CD, 2010 WL 2483512 (Tenn. Ct. Crim. App. June 21, 2010), *perm app. denied* (Tenn. Dec. 8, 2010.). On March 28, 2011, the petitioner filed a lengthy *pro se* post-conviction petition and supporting memorandum in the state court. (ECF Nos. 25-11, 25-12, 25-13, 25-14.) Post-conviction counsel was appointed and a brief amended petition filed. (ECF No. 25-14, at 76.) After conducting a hearing, the trial court entered an order denying the petition. (ECF No. 25-15, at 8–14.) That decision was affirmed too. *State v. Majors*, No. M2011-02353-CCA-R3-PC,

2012 WL 3291801 (Tenn. Ct. Crim. App. Aug. 13, 2012), *perm. app. denied* (Tenn. Jan. 14, 2013).

Majors filed his § 2254 petition in this Court on April 25, 2013 (ECF No. 1, at 83 (petitioner's oath as to the date the petition was placed in the prison mailing system)). The respondent concedes that the petition is timely. (ECF No. 23, at 2.)

## II. STATEMENT OF FACTS

The Tennessee Court of Criminal Appeals summarized the testimony presented during trial as follows:[1]

> The Defendant's convictions arise from the home invasion of Gene and Wendy Douglas in the early morning hours of June 27, 2007. Wendy Douglas testified that she was asleep when she heard her husband calling her for help and asking her to call 9-1-1. She found her husband in the garage struggling with an individual. The individual was on top of her husband and had his hands around her husband's throat. Mrs. Douglas testified that she ran to her husband's aid and struck the assailant in the head. She then ran back to her bathroom where she called 9-1-1 from her cellular telephone. Soon after she made the telephone call, the assailant fled the couple's garage. The couple discovered that the keyless entry to Mrs. Douglas' car was missing, along with her driver's license and a credit union debit card. Within minutes, the police brought a suspect to the couple's home where Mrs. Douglas and her husband separately identified the Defendant as the intruder. Mrs. Douglas described the events of that night as "terrifying" and "horrible."
>
> Gene Douglas testified that he typically awakes at 1:00 a.m. to work in his home office before leaving for work at 4:30 a.m. each day. On June 27, he went to the kitchen for coffee before going down the hallway to his home office. As soon as he entered his office, he realized that "things were disheveled." Upon further inspection, he said that he found "someone standing there . . . pointing a gun at me" when he went down the hallway to a bathroom doorway. He described that he was "gripped with fear."
>
> Mr. Douglas recalled that the Defendant told him not to do anything or he would kill him. The Defendant ordered Mr. Douglas to the kitchen where Mr. Douglas was able to discreetly put some kitchen shears in the pocket of his bathrobe. Mr. Douglas told the Defendant that his wife was asleep and that if the Defendant wanted money, they would need to go to an automated teller machine (ATM).

Mr. Douglas said that the Defendant then ordered him to the garage where the Defendant attempted to tie his hands behind his back. During this effort, Mr. Douglas realized that the Defendant's gun was no longer pointed at him so he jumped on the Defendant to disarm him. The gun dropped and fell into pieces on the garage floor. Next, a struggle ensued during which the Defendant began to strangle Mr. Douglas. At about this time, while Mr. Douglas was yelling for his wife's help, Mrs. Douglas ran into the garage and hit the Defendant on the head. At some point, Mr. Douglas reached for the kitchen shears that were hidden in his bathrobe.

---

[1] The factual findings of the state appellate court are presumed to be correct. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

Eventually, the Defendant fled the scene through the garage door. By then, Mrs. Douglas had contacted the police, and the couple directed the police to their home and, ultimately, the discovery of the Defendant. Mr. Douglas testified that he was still on the telephone with the 9-1-1 operator when the police arrived. Soon after, another officer arrived with the Defendant and the couple separately identified the Defendant as their assailant.

Mr. Douglas recalled that the Defendant threatened to torture him and his wife and leave them dead in their home. The Defendant also told Mr. Douglas that someone was waiting for him. Mr. Douglas said that he initially believed the Defendant was pointing a rifle at him and did not realize the weapon was an air gun until it fell apart in the garage. Mr. Douglas also stated that his wallet was found empty in the office, although the credit cards taken from the wallet were never recovered.

Montgomery County 9-1-1 operator Suzan Gafford testified that she received a call on June 27, 2007 at approximately 2:00 a.m. from someone reporting an intruder in her home. Ms. Gafford later learned that the caller was Mrs. Douglas. Ms. Gafford recalled that the caller was so upset that she was unable to obtain much information from her at first but eventually the caller's husband came to the phone. The twenty minute 9-1-1 conversation, which recited the events of the night leading up to several officers' arrival at the Douglas home, was played for the jury.

Detective Julie Webb of the Montgomery County Sheriff's Office testified that she was called to the Douglas home to investigate the home invasion. On her way, she saw a "beat up old white pickup truck" stopped within one mile of the Douglas home. She recalled that Deputy Dexter Mines was with the truck. He was talking to two people and had another person in his cruiser. About twenty minutes after Detective Webb's arrival at the Douglas home, Deputy Mines arrived with the individual and the Douglases separately identified the individual, the Defendant, as their assailant. Detective Webb recalled that both Mr. and Mrs. Douglas "appeared to be certain" in their identification of the Defendant.

Montgomery County Sheriff's Office Corporal Stephen Heise testified that he, Deputy Mines and Deputy William Wall responded to the call of the home invasion. While blocking escape routes from the residence, Corporal Heise observed a white pick-up truck approaching his vehicle. Suddenly, a black male jumped out of the vehicle. Corporal Heise was able to apprehend the man while Deputy Mines questioned two others in the truck. Deputy Wall also located a wrecked and abandoned vehicle less than one quarter of a mile from the Douglas home.

Savannah Carroll testified that she and Billy Joe Biggs were at the Lock B Recreational Area early in the morning on June 27, 2007. She recalled that they had only been there about five minutes when they "heard a big boom, like a crash." They drove away from the recreational area and soon discovered a wrecked car. When she and Mr. Biggs stopped to see if anyone needed help, a young black man, the Defendant, walked out of the woods and told them that he had been driving while drinking and had an accident. Ms. Carroll recalled that the Defendant wore distinctive braids in his hair. Ms. Carroll stated that another black man with a shaved head ran back into the woods. She said that he "didn't want to go with us." However, the Defendant accepted their offer of a ride to a nearby store. Before they reached the store, the police surrounded their pickup truck. When the Defendant attempted to run from the vehicle, the police apprehended him.

No weapons or stolen property were recovered from the Defendant. Shoe prints taken from outside an open window at the scene matched those worn by the Defendant, although they were a common style of athletic shoe. There were no identifiable fingerprints found at the scene. Despite a diligent search, the second suspect was never found. Deputy Mines recalled that a dark-colored new model pickup truck sped by them while they

questioned the witnesses at the white truck.

*State v. Majors*, No. M2009-00483-CCA-R3-CD, 2010 WL 2483512, at *1–3 (Tenn. Ct. Crim. App. June 21, 2010), *perm. to appeal denied* (Tenn. Dec. 8, 2010).

The state appellate court summarized the evidence presented at the post-conviction hearing as follows:

> Petitioner filed a lengthy *pro se* petition for post-conviction relief, alleging, among other things, that he received ineffective assistance of counsel at trial. At the hearing on the petition for post-conviction relief, Petitioner testified as to various allegations of ineffective assistance of counsel. Specifically, Petitioner claimed that trial counsel was ineffective because she failed to recognize that the State withheld favorable evidence with regard to the shoeprint found at the scene. Petitioner's main complaint with regard to trial counsel stemmed from the way she handled the issues relating to identification. Petitioner insisted that his identity was the main issue at trial.
>
> Petitioner also complained about the identification process. He thought that it was inherently suggestive but admitted that the issue had been addressed on direct appeal by this Court and he was not granted relief. Further, Petitioner complained that one of the witnesses described the suspect as "light-skinned" and failed to describe the suspect's clothing. Petitioner insisted that had trial counsel more effectively cross-examined the witness there would have been a different result at trial. Petitioner also thought that trial counsel should have tried to impeach one of the detectives by using the testimony of the victims.
>
> Petitioner next complained that trial counsel was ineffective for failing to request a special jury instruction on identity. Petitioner conceded that the jury was in fact given an instruction on identity at trial but complained that it was "basic."
>
> Petitioner testified that trial counsel should have objected to several statements made by the prosecutor in closing argument. On cross-examination, Petitioner emphasized that the primary issue in his petition was about ineffective assistance of counsel with respect to failure to raise issues with regard to identity at trial. Petitioner also complained that appellate counsel failed to raise several issues on appeal.
>
> Trial counsel testified that she was retired from a twenty-five year career in the Public Defender's office. Trial counsel recalled Petitioner's case and determined that based on the evidence and research she did prior to trial there was no basis for a challenge to the identification procedure used. Trial counsel specifically recalled cross-examining the victims but acknowledged that she was concerned because of their emotional state and ability to become sympathetic figures to the jury. Trial counsel felt at the time that any questioning deemed too rigorous would have a negative effect on the jury.

*Majors v. State*, No. M2011–02353–CCA–R3–PC2012 WL 3291801, at *1–2 (Tenn. Ct. Crim. App. Aug. 13, 2012), *perm. to appeal denied* (Tenn. Jan. 14, 2013).

### III. ISSUES PRESENTED FOR REVIEW

In his present petition, Majors asserts the following claims for relief:

1. That the cumulative errors and omissions of trial counsel denied the petitioner the right of effective

-4-

assistance of counsel, as guaranteed by the Sixth Amendment. More specifically, the petitioner asserts that trial counsel was ineffective for:

> (a) failing to suppress the victims' out-of-court identifications of the petitioner at trial;
>
> (b) failing to further cross examine the victims about their identification of the petitioner and other issues;
>
> (c) failing to adequately investigate and present a third-party culpability defense;
>
> (d) failing to request a special jury instruction on the identifications;
>
> (e) failing to object to the state's questioning of Gene Douglas as to whether the robber was alone;
>
> (f) failing to impeach Gene Douglas based on a prior statement in which he did not mention that the robber stated someone was waiting for him;
>
> (g) failing to impeach Gene Douglas based on a prior statement in which he did not mention that he had turned on the garage lights;
>
> (h) failing to object to the state's references to the petitioner's prior criminal record;
>
> (i)–(n) failing to object to various improper references by the prosecutor during his opening statement, including when the prosecutor improperly vouched for the credibility of the state's witnesses, referred to the petitioner as being the "captain of a two man predator team" (ECF No. 1, at 7), compared his hairstyle to that of the petitioner, expressed his opinion as to the petitioner's guilt, improperly appealed to the jury's fears, and made an allegedly "racial" statement about the design of the robber's hat; and
>
> (o)–(r) failing to object to allegedly improper statements by the prosecutor during his closing argument, including when the prosecutor vouched for his own integrity, "appealed to the jury pressure by introducing a[n] unknown individual into petitioner's case" (ECF No. 1, at 8) (that is, the bald black man Savannah Carroll testified she saw run into the woods when she and Billy Joe Biggs picked up the petitioner near the wrecked pick-up truck), told the jury the petitioner threw away some credit cards, and told the jury they should be the "final link in the chain of law enforcement" (*id.*).

(ECF No. 1, at 7–8.)

In addition, the petitioner asserts, in a footnote, that his counsel was ineffective because she was unprepared for trial. (ECF No. 1, at 8, n.2.)

2. That the convictions for especially aggravated kidnapping and attempted aggravated robbery violate the Due Process Clause of the Fourteenth Amendment because the kidnapping was "essentially incidental" to the attempted robbery. (ECF No. 1, at 77.)

**IV. STANDARD OF REVIEW**

A federal district court will not entertain a petition for writ of habeas corpus unless the petitioner has first exhausted all available state-court remedies for each claim in his petition. 28 U.S.C. § 2254(b)(1). While exhaustion is not a jurisdictional requirement, it is a strictly enforced doctrine which promotes comity between the states and the federal government by giving the state an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Consequently, as a condition precedent to seeking federal habeas corpus relief, the petitioner is required to fairly present his claims to every available level of the state court system. *Rose v. Lundy*, 455 U.S. 509, 518–20 (1982); *see also Duncan v. Henry*, 513 U.S. 364, 365–66 (1995) ("[A] federal habeas petitioner . . . [must] provide the state courts with a 'fair opportunity' to apply controlling legal principles to the facts bearing upon his constitutional claim."). Moreover, "the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998). Once a petitioner's federal claims have been raised in the highest state court available,[2] the exhaustion requirement is satisfied, even if that court refused to consider the claims. *Manning v. Alexander*, 912 F.2d 878, 883 (6th Cir. 1990).

A habeas petitioner bears the burden of demonstrating that he has properly and fully exhausted his available state court remedies with respect to the claims he presents for federal habeas review. *Prather v. Rees*, 822 F.2d 1418, 1420 n.3 (6th Cir. 1987) (citation omitted). If a habeas petitioner retains the right under state law to raise a claim by any available procedure, he has not exhausted that claim. 28 U.S.C. § 2254(c). Ordinarily, habeas petitions containing unexhausted claims are dismissed without prejudice in order to permit the petitioner the opportunity to pursue them in state court. *Alley v. Bell*, 307 F.3d 380, 385 (6th Cir. 2002) (citing *Rose*, 455 U.S. at 518, 520–22); *see also Rhines v. Weber*, 544 U.S. 269 (2005) (reconfirming the

---

[2] In Tennessee, review by the state Supreme Court is not required for exhaustion. Instead, "once the Court of Criminal Appeals has denied a claim of error, 'the litigant shall be deemed to have exhausted all available state remedies available for that claim.'" *Adams v. Holland*, 330 F.3d 398, 402 (6th Cir. 2003) (quoting Tenn. S. Ct. R. 39).

continued relevance of *Rose* under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")).

If, however, an unexhausted claim would be procedurally barred under state law, for instance by statutes of limitations or state rules barring successive petitions, then the claim is deemed exhausted (because no further state review is available) but procedurally defaulted, and may not be considered by the federal court on habeas review except under extraordinary circumstances. *Alley v. Bell*, 307 F.3d 380, 385–86 (6th Cir. 2002) (citations omitted); *In re Cook*, 215 F.3d 606, 607–08 (6th Cir. 2000). Specifically, in order to obtain consideration of a claim that is procedurally defaulted, a petitioner must demonstrate both cause for the procedural default and actual prejudice resulting from the alleged constitutional errors, or alternatively that failure to consider the claims will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *cf. Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle v. Isaac*, 456 U.S. 107, 129 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

Even when a petitioner's application for a writ of habeas corpus raises only federal constitutional claims that have been properly exhausted in the state courts, this Court's review of the state court's resolution of those issues remains quite limited. The standard for reviewing applications for the writ of habeas corpus is set forth in 28 U.S.C. § 2254(d). This section states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.*; *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000); *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). This Court must presume the correctness of state court factual determinations, and the petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Cremeans v. Chapleau*, 62 F.3d 167, 169 (6th Cir. 1995) ("We give complete deference to state court findings unless they are clearly erroneous."), *abrogated on other grounds by Thompson v. Keohane*, 516 U.S. 99, 111 (1995).

The United States Supreme Court has explained the proper application of the "contrary to" clause

as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . . A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [this Court's] precedent.

*Williams v. Taylor*, 529 U.S. 362, 405–06 (2000) (citation omitted).

With respect to the "unreasonable application" clause of § 2254(d)(1), the Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause when "a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable.
> . . .
>
> . . . . [A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409–11 (emphasis original).

With these principles in mind, the court will turn to the examination of the claims raised in Majors' petition for habeas relief.

## V.   ANALYSIS AND DISCUSSION

### A.   Ground One: That the Petitioner Was Denied the Effective Assistance of Counsel

There is no dispute that the petitioner fully exhausted his ineffective-assistance claims in the state courts. The trial court entered an order exhaustively addressing each of the petitioner's claims individually and concluding, with respect to each, either that counsel was not ineffective or that the petitioner failed to show prejudice. The court therefore denied relief. (ECF No. 25-15, at 8–14.) The Tennessee Court of Criminal Appeals did not address each of the petitioner's numerous claims individually, but instead lumped them into four general categories: (1) that trial counsel erred in not sufficiently challenging the "show-up" identification as unduly prejudicial; (2) that counsel erred in failing to impeach or further cross-examine the victims at trial, particularly regarding identification; (3) that counsel was ineffective for failing to request an

additional instruction on identification; and (4) that counsel was ineffective for failing to object to statements made by the State during trial. In ruling on these claims, the court stated as follows:

> When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, the petitioner bears the burden of showing that (a) the services rendered by trial counsel were deficient and (b) that the deficient performance was prejudicial. *See Powers v. State*, 942 S.W.2d 551, 558 (Tenn. Crim. App. 1996). In order to demonstrate deficient performance, the petitioner must show that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). In order to demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *See Strickland v. Washington*, 466 U.S. 668, 694 (1984). "Because a petitioner must establish both prongs of the test to prevail on a claim of ineffective assistance of counsel, failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997).
>
> As noted above, this Court will afford the post-conviction court's factual findings a presumption of correctness, rendering them conclusive on appeal unless the record preponderates against the court's findings. *See id.* at 578. However, our supreme court has "determined that issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact . . . ; thus, [appellate] review of [these issues] is *de novo*" with no presumption of correctness. *Burns*, 6 S.W.3d at 461.
>
> Furthermore, on claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight. *See Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. 1994). This Court may not second-guess a reasonably-based trial strategy, and we cannot grant relief based on a sound, but unsuccessful, tactical decision made during the course of the proceedings. *See id.* However, such deference to the tactical decisions of counsel applies only if counsel makes those decisions after adequate preparation for the case. *See Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).
>
> On appeal, Petitioner complains that the post-conviction court improperly denied his petition for post-conviction relief. Specifically, Petitioner argues that he received ineffective assistance of counsel because trial counsel failed in several different ways to properly raise the issue of identification. . . .
>
> The overriding theme of Petitioner's argument on appeal is that trial counsel erred by not sufficiently challenging witness identification of him as the perpetrator of the offense. Specifically, Petitioner first insists that trial counsel was ineffective for not challenging the "show up" identification as unduly suggestive. Trial counsel testified at the post-conviction hearing that she reviewed the evidence and researched the issue and concluded that she was unlikely to be successful if she challenged the identification process at trial. Petitioner did not show any evidence to the contrary at the hearing on the post-conviction petition. Moreover, this Court addressed the identification made by the victims on direct appeal and found them to be unequivocal. *Craig O. Majors*, 2010 WL 2483512, at *7. The evidence does not preponderate against the post-conviction court's decision in this regard. Petitioner is not entitled to relief on this issue.
>
> Next, Petitioner claims that trial counsel was ineffective in cross-examining and/or failing to impeach the victims at trial. Trial counsel testified that she cross-examined both victims at trial but found them to be very sympathetic witnesses because they were extremely emotional. In her experience, if she cross-examined the victims too harshly it would be counterproductive. Petitioner did not show how further cross-examination would

-9-

> have resulted in a different jury verdict at trial. As pointed out by the post-conviction court, these were trial strategy decisions made and employed by trial counsel. It is not the function of this Court to second-guess trial strategy. *Henley,* 960 S.W.2d at 579. The evidence does not preponderate against the determination of the post-conviction court. Petitioner is not entitled to relief on this issue.
>
> Petitioner alleges that trial counsel was ineffective for failing to request an additional instruction on identification. Petitioner acknowledged that the trial court instructed the jury on this issue at trial but complained that the trial court should have told the jury that identifications made by victims were somehow less reliable. If a jury instruction fails to "submit the legal issues" or "misleads the jury as to the applicable law" it is erroneous. *State v. Hodges*, 944 S.W.2d 346, 352 (Tenn. 1997). Petitioner has shown neither instance with regard to the jury instructions provided to the jury herein. Further, any comment by the trial court as to the reliability of an identification could have been perceived as a comment on the evidence. The trial court is prohibited from commenting on the evidence. *See* Tenn. Const. art. VI, § 9. The evidence does not preponderate against the determination of the postconviction court. Petitioner is not entitled to relief on this issue.
>
> Finally, Petitioner complains about trial counsel's failure to object to certain statements made by the State during trial. Specifically, Petitioner alluded to "racial" remarks and statements by the prosecutor that essentially vouched for the credibility of the victims. The post-conviction court determined that there was no basis for the objections. Petitioner has not shown how he was prejudiced by any objectionable statements that may have been made by the prosecutor or how the result of his trial would have been different had trial counsel objected. Petitioner is not entitled to relief on this issue.

*Majors v. State*, 2012 WL 3291801, at *3–5 (footnote omitted).

This Court does not review the petitioner's ineffective-assistance claims *de novo*. Rather, the Court must consider whether the state court's application of federal law or its determination of the facts was objectively unreasonable. 28 U.S.C. § 2254(d). It was not. The Tennessee court properly identified *Strickland v. Washington*, 466 U.S. 668 (1984), as the controlling law, and the court was not unreasonable in its application of *Strickland*, or in concluding both that the petitioner failed to establish that his counsel was deficient or that he had suffered prejudice.

Moreover, the fact that the state court did not explicitly address each individual ineffective-assistance claim raised by the petitioner does not change this Court's standard of review under the circumstances. As the Supreme Court recently confirmed, "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning." *Harrington v. Richter*, --- U.S. ----, 131 S. Ct. 770, 784 (2011). Thus, where the state court has not expressly explained its reason for a decision, "the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief. This is so whether or not the state court reveals which of the elements in a multipart claim it found insufficient, for §

2254(d) applies when a 'claim,' not a component of one, has been adjudicated." *Id.*

Majors here has not shown that the state court's resolution of his ineffective-assistance claims violated federal standards. He is not entitled to relief on the basis of these claims.

## B. Ineffective Assistance: That counsel was not prepared for trial

In footnote 2 of his petition, Majors raises an unenumerated claim that his trial counsel was not prepared for trial, a claim not previously presented to the Tennessee Court of Criminal Appeals. Where a claim was not presented to the highest available state court, but the opportunity to do so is foreclosed by a state procedural bar that the state regularly enforces, the claim is technically exhausted (because there is no other available state-court remedy) but procedurally defaulted, and may not be considered by the federal court on habeas review except under extraordinary circumstances. *Alley v. Bell*, 307 F.3d 380, 385–86 (6th Cir. 2002) (citations omitted).

Here, the petitioner is precluded from raising his claim by the one-year statute of limitations and one-petition rule found in Tenn. Code Ann. § 40-30-102(a) & (c). Tennessee regularly enforces these rules. *Hutchison v. Bell*, 303 F.3d 720, 738-39 (6th Cir. 2002). The petitioner has not demonstrated extraordinary circumstances to over come the default. The petitioner is not entitled to relief on the basis of this claim.

## C. Ground Two: That the Petitioner's Aggravated Kidnapping Conviction Violated Due Process

The respondent failed to address this argument at all in his answer. The Court nonetheless finds that the record is sufficiently well developed to permit resolution of the claim in the absence of input from the respondent.

In his direct appeal, Majors argued that his conviction for especially aggravated kidnapping and attempted aggravated robbery violated due process under both the federal and state constitutions, because the especially aggravated kidnapping was incidental to the attempted aggravated robbery. Although he referenced the United States Constitution in making this argument, the petitioner did not cite to any federal case law construing the protections of due process to extend to such a situation. Instead, he relied solely on Tennessee case law. The Tennessee Court of Criminal Appeals likewise considered only state law in concluding that the petitioner's right to due process had not been violated by the dual conviction. The state court reasoned as follows:

In [*State v. Anthony*, 817 S.W.2d 299 (Tenn. 1991)], our supreme court held that dual convictions for armed robbery and aggravated kidnapping violated the due process guarantees of article I, section 8 of the Tennessee Constitution when the confinement, movement, or detention of the kidnapping is "essentially incidental" to the robbery. *Anthony*, 817 S.W.2d at 306. Therefore, in order for dual convictions to stand, the trial court must determine whether the confinement, movement, or detention was significant enough, in and of itself, to warrant independent prosecution. *Id.* As guidance, our supreme court noted that "one method of resolving this question is to ask whether the defendant's conduct 'substantially increased [the] risk of harm over and above that necessarily present in the crime . . . itself.'" *Id.* (quoting *State v. Rollins*, 605 S.W.2d 828, 830 (Tenn. Crim. App. 1980)). The court also admonished courts "to apply the [kidnapping] statute narrowly, so as to make its reach fundamentally fair and to protect the due process rights of every citizen." *Id.*

Six years later, in *State v. Dixon*, 957 S.W.2d 532 (Tenn. 1997), the court refined *Anthony*'s applicability to those cases to "prevent the injustice which would occur if a defendant could be convicted of kidnapping where the only restraint utilized was that necessary to complete the act of rape or robbery." *Dixon*, 957 S.W.2d at 534. Likewise, a separate conviction for kidnapping may stand for "any restraint in addition to that which is necessary to consummate rape or robbery." *Id.* at 535. The court went further to establish a two-prong test for analyzing when a separate conviction for kidnapping violates due process. First, the trial court must determine "whether the movement or confinement was beyond that necessary" to commit the accompanying felony. *Id.* If so, the trial court must then ascertain "whether the additional movement or confinement: (1) prevented the victim from summoning help; (2) lessened the defendant's risk of detection; or (3) created a significant danger or increased the victim's risk of harm." *Id.*

Applying these standards to the facts of this case, the record reflects that when the victim discovered the Defendant in his home, the Defendant immediately pointed his weapon at the victim and demanded money. Contemporaneous to this request was the threat to torture and leave for dead both Mr. Douglas and his wife. The Defendant then ordered the victim down the hallway, through the kitchen and into the garage where he attempted to restrain the victim with cords and rope. We agree with the State that this additional movement and confinement exceeded what was necessary to accomplish the attempted aggravated robbery.

Turning to the second prong of the *Dixon* analysis, the evidence shows that the victim was able to summon help from his wife although he had been moved to the garage by the Defendant. However, the evidence also shows that the Defendant ordered the victim to the garage in order to bind the victim. Furthermore, the movement to the garage presented the opportunity for the struggle between the Defendant and the victim. Therefore, we conclude that the additional movement and confinement both "lessened the [D]efendant's risk of detection" and "increased the victim's risk of harm." Accordingly, dual convictions for especially aggravated kidnapping and attempted aggravated robbery do not violate due process under these facts and circumstances.

*State v. Majors*, 2010 WL 2483512, at *5–6.[3]

---

[3] The Tennessee Supreme Court recently overruled both *Anthony* and *Dixon*, and held that, under Tennessee law, kidnapping was to be punished as a separate offense "only [in] those instances in which the removal or confinement has criminal significance above and beyond that necessary to consummate some underlying offense, such as robbery or rape." *State v. White*, 362 S.W.3d 559, 577 (Tenn. 2012). The court further concluded that the due-process concerns earlier expressed in *Anthony* more properly were addressed in the first instance to the jury rather than to an appellate court: "[W]e have concluded that whether the evidence, beyond a reasonable doubt, establishes each and every element of kidnapping, as defined by statute, is a question for the jury properly instructed under the law. The jury, whose primary obligation is to

In *Anthony*, the case upon which the petitioner relies, the Tennessee Supreme Court expressly considered whether the kidnapping conviction at issue "violate[d] the due process guarantees found in both [the federal and state] constitutions." *Anthony*, 817 S.W.2d at 301. The Sixth Circuit has recognized that a petitioner may fairly present both the legal and factual basis of his federal claim to the state court for exhaustion purposes by "phras[ing] the federal claim in terms of the pertinent constitutional law *or in terms sufficiently particular to allege a denial of the specific constitutional right in question*." *Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004) (emphasis added). This Court finds that Majors' invocation of due-process in his direct appeal was sufficiently particular to allege a denial of his Fourteenth Amendment right to due process, and that the claim is therefore fully exhausted for purposes of this Court's review.

The Court nonetheless finds that the Tennessee court's rejection of the claim was not contrary to and did not involve an unreasonable application of clearly established federal law, nor did it result in a decision that was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The Due Process Clause of the Fourteenth Amendment simply requires that a criminal conviction be supported by proof beyond a reasonable doubt with respect to every fact necessary to constitute the offense charged. *In re Winship*, 397 U.S. 358, 363–64 (1970). The standard for determining if a conviction is supported by sufficient evidence is "whether after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 317 (1979). The jury in Majors' case found that each element of the especially aggravated kidnapping charges had been proven beyond a reasonable doubt, and the Tennessee Court of Criminal Appeals expressly considered whether the

---

ensure that a criminal defendant has been afforded due process, must evaluate the proof offered at trial and determine whether the State has met its burden." *Id.* at 577 (citations omitted). The court expressly noted, however, that its holding did not "articulate a new rule of constitutional law or require retroactive application." *Id.* at 578.

The procedure embraced in *White* clearly offers better due-process protections than the procedure still in use at the time of Majors' appeal, insofar as *White* now requires the jury to resolve the question of whether the kidnapping in a given case was merely incidental to an accompanying felony charge. However, the petitioner here did not appeal the jury instructions given in his case or raise an express sufficiency-of-the-evidence challenge based on the elements of the kidnapping conviction, nor did he assert that his counsel was ineffective for failing to raise these arguments. These arguments therefore are now foreclosed to him. Regardless, the standard for this Court is whether the conviction violated *federal* due-process standards, not whether it comported with state law.

kidnapping was merely "incidental" to the robbery such that dual convictions would offend due process. Finally, this Court has reviewed the evidence presented in the case, and concludes that the state court was not unreasonable in concluding that the evidence supported the kidnapping conviction. The petitioner has not established that *no* rational trier of fact could have found him guilty of aggravated kidnapping. The Tennessee court's decision upholding Majors' convictions was neither contrary to law nor unreasonable. The petitioner is therefore not entitled to relief on the basis of this claim.

VI.    **CONCLUSION**

For the reasons set forth herein, Craig Major's petition under § 2254 will be denied and this matter dismissed with prejudice. An appropriate order is filed herewith.

Todd Campbell
United States District Judge